UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAYLENE M. H.,[1] <br><br>  Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>  Defendant. | Case No. 5:22-cv-0987-JC <br><br> MEMORANDUM OPINION |

**I. SUMMARY**

On June 13, 2022, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on plaintiff's motion for summary judgment ("Plaintiff's Motion") and defendant's memorandum in support of Answer ("Defendant's Mem."). The Court has taken Plaintiff's Motion and Defendant's Mem. under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15.

---

[1] Plaintiff's name is partially redacted to protect plaintiff's privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about February 5, 2019, plaintiff protectively filed an application for supplemental security income ("SSI"), alleging disability beginning on December 27, 2017 due to bipolar disease, heart palpitations, and high cholesterol.[2] (Administrative Record ("AR") 247-48, 378-82). The ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 31-44).

On August 27, 2021, the ALJ determined that plaintiff had not been disabled through the date of the decision. (AR 15-26). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and thoracic spine with stenosis and bulging discs, hypertensive vascular disease, status post left shoulder surgery, synovitis of the knee with internal derangement and tear of the medial meniscus status post bilateral knee surgery, borderline intellectual functioning, and bipolar disorder (AR 17); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 18-20); (3) plaintiff retained the residual functional capacity ("RFC") to perform medium work (20

---

[2]The record reflects plaintiff previously received SSI benefits from December 17, 1992 through at least February 1, 2017. (AR 244-45). On February 10, 2017, the Social Security Administration notified plaintiff that she had received overpayments in the amount of $19,420.50 due to unreported spousal income and in-kind support of free rent from October 2014 through February 2017. (AR 244-45). Plaintiff disputed the overpayment and facts, but on March 23, 2018, an administrative law judge found plaintiff liable for the overpayment. (AR 244-46). The Disability Report connected to the application at issue states plaintiff had no prior filings (AR 393) and the ALJ neither mentioned plaintiff's prior receipt of benefits nor the reason they were discontinued.

C.F.R, § 416.967(c)), with additional limitations[3] (AR 20-24); (4) plaintiff had no past relevant work (AR 24); and (5) plaintiff could perform other work existing in significant numbers in the national economy and therefore was not disabled (AR 24-25).

On April 12, 2022, the Appeals Council denied plaintiff's application for review. (AR 1-3).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th Cir. 2020); 20 C.F.R. § 416.905(a). To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)

---

[3]The ALJ determined that plaintiff would be limited to: (1) occasionally climbing ladders, ropes, or scaffolds; (2) frequently climbing ramps or stairs; (3) frequently balancing, stooping, kneeling, crouching, or crawling; (4) occasionally overhead reaching with the left upper extremity; (5) jobs allowing normal breaks every two hours; (6) simple, routine, and repetitive tasks not at a fast or production pace; and (7) jobs with occasional interaction with co-workers and supervisors and no interaction with the general public. (AR 20).

3

(describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

### B. Federal Court Review of Social Security Disability Decisions

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a

preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff raises two issues that are substantively the same, arguing that the ALJ failed properly to evaluate the opinion of the consultative examiner and that the ALJ's RFC determination was not supported by substantial evidence because it did not incorporate all of the consultative examiner Dr. Jessica Durr's opined limitations. (Plaintiff's Motion at 2-6). Plaintiff has not shown a reversal or remand is warranted on the foregoing bases.

### A. Pertinent Law

For claims filed after March 27, 2017 (such as plaintiff's present claims), new regulations govern the evaluation of medical opinion evidence. Under these regulations, ALJs no longer "weigh" medical opinions; rather, ALJs determine

5

which opinions are the most "persuasive" by focusing on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors. See 20 C.F.R. § 416.920c(c)(1)-(5). The two most important factors in determining the persuasiveness of medical opinions are supportability and consistency with the evidence. See 20 C.F.R. § 416.920c(a). ALJs must explain how they considered the factors of supportability and consistency, but need not explain how they considered any other factor. See 20 C.F.R. § 416.920c(b).

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant. . . objective medical evidence." Consistency means the extent to which a medical opinion is "consistent. . . with the evidence from other medical sources and nonmedical sources in the claim."

Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022) (internal citations omitted; citing 20 C.F.R. § 404.1520c(c)(1), (2)).[4]

The new regulations also eliminated the term "treating source," as well as the rule previously known as the treating source rule or treating physician rule, which formerly required special deference to the opinions of treating sources. See 20 C.F.R. § 416.920c; Woods, 32 F.4th at 792 ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Even so, in evaluating medical opinion evidence "under the new regulations, an ALJ cannot reject an examining or treating doctor's

---

[4]Such terms have the same meaning in the referenced Disability Insurance Benefit regulations (20 C.F.R. § 404.1520c(c)(1), (2)) as they do in the corresponding governing SSI regulations (20 C.F.R. § 416.920c(c)(1), (2)).

opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods, 32 F.4th at 792. Finally, the new regulations command that an opinion that a claimant is disabled or not able to work is "inherently neither valuable nor persuasive," and an ALJ need not provide any analysis about how such evidence is considered. See 20 C.F.R. § 416.920b(c)(3).

### B. Summary of the Consultative Examiner's Opinion

Dr. Jessica Durr, a pyschologist, examined plaintiff on May 16, 2021. (AR 972-77). Dr. Durr did not review any medical records. (AR 974). Dr. Durr observed primarily normal objective findings, but psychological testing placed plaintiff in the borderline intellectual range. (AR 974-76). Based on plaintiff's history, the mental status examination, and the psychological tests, Dr. Durr diagnosed plaintiff with borderline intellectual functioning and bipolar disorder. (AR 976). Dr. Durr opined:

> [Plaintiff] presents with the ability to understand, remember, and carry out short and simplistic instructions. She presents with a mild inability to understand, remember, and carry out detailed instructions. She is likely to perform better with auditory instructions than with visual ones. [Plaintiff] presents with the ability to make simplistic work-related decisions without special supervision. She has a mild inability to maintain consistency and pace throughout the day. She has a moderate inability to follow normal rules of the workplace. [Plaintiff] is at risk for calling in sick, not showing up, or leaving early. . . Plaintiff has a mild inability to interact appropriately with supervisors, coworkers, and peers.

(AR 976).

///
///

### C. Analysis

The ALJ determined plaintiff had the mental RFC to perform simple, routine, and repetitive tasks not at a fast or production pace, with occasional interaction with co-workers and supervisors and no interaction with the general public. (AR 20). In determining plaintiff's mental RFC, the ALJ found Dr. Durr's opinion "somewhat persuasive as to the finding of mild to moderate limitations."[5] (AR 24). The ALJ discussed Dr. Durr's opinion and found her mild and moderate limitations to be generally consistent with plaintiff's conservative treatment history and supported by plaintiff's treatment notes and activities. (AR 23). Nevertheless, taking into account the entire record, the ALJ found Dr. Durr's opinion to be only somewhat persuasive and actually assessed more restrictive limitations than those recommended by Dr. Durr.

In the area of understanding, remembering, or applying information, the ALJ noted that plaintiff's ability to recall was intact during Dr. Durr's examination (AR 975); plaintiff exhibited normal speech and thought processes in the treatment notes (see, e.g., AR 916, 961-62, 965, 967); and the record showed that she was capable of counting change, managing finances, reading, and playing board games. (AR 399-400, 409, 974). But the ALJ also found that plaintiff's psychometric testing results suggested plaintiff had moderate, and not mild, limitations in understanding. (AR 19, 24). The ALJ reasonably translated this limitation to simple, routine, and repetitive tasks. (AR 19). See Rounds, 807 F.3d at 1006 ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

---

[5]The ALJ found the opinions of the state agency physicians to be not persuasive. (AR 23). The ALJ noted that their opined mild limitations in all functional areas were "somewhat supported by the largely normal objective findings," however they were an underestimate of plaintiff's limitations given her extensive medication treatment and psychometric testing results. (AR 23).

Similarly, in the area of concentrating, persisting, or maintaining pace, the ALJ noted that the record reflected plaintiff was capable of activities requiring concentration, but she was unable to perform serial threes and sevens at the consultative examination. (AR 19, 23, 975). The ALJ again reasonably concluded the limitation in this area was actually moderate and a restriction to "simple, routine, and repetitive tasks not at a fast or production rate" accommodated for it.

Finally, the ALJ noted that plaintiff's persistent depressive symptoms may affect her ability to relate to others and assessed greater interaction limitations than Dr. Durr recommended. (AR 19).

Plaintiff does not disagree with the ALJ's above evaluation or his discussion of the medical evidence. Instead, plaintiff argues the ALJ erred because the ALJ had to address, but failed to address each limitation recommended by Dr. Durr. An ALJ must consider all relevant evidence in the record when assessing a claimant's RFC. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); Social Security Ruling ("SSR") 96-8p, 1996 WL 1996 WL 374184, at *5. But an ALJ is neither required to discuss every piece of evidence nor every word or limitation in an opinion. See, e.g., James T. v. Kijakazi, 2022 WL 2952469, at *6 (S.D. Cal. Jul. 26, 2022) ("The Court acknowledges that the ALJ need not discuss every word or every limitation in an opinion."), report and recommendation adopted, 2022 WL 4280647 (S.D. Cal. Sept. 15, 2022); Alvarez v. Comm'r of Soc. Sec., 2022 WL 2359322, at *3 (E.D. Cal. June 29, 2022) ("While the ALJ did not detail which opined limitations were somewhat persuasive and which were not – a fact Plaintiff criticizes – the ALJ was not required to perform a function-by-function analysis, nor address each work-related restriction identified in the record so long as the RFC is otherwise supported by substantial evidence.") (citation and internal quotations marks omitted); Fausto S.H. v. Kijakazi, 2022 WL 644167, at *5 (C.D. Cal. Jan. 24, 2022) ("An ALJ is not obligated to discuss . . . every word of a doctor's opinion or

include limitations not assessed by the doctor."); Charlene J. R. v. Kijakazi, 2021 WL 5051930, at *4 (C.D. Cal. Oct. 29, 2021) (finding the ALJ was only required to consider the supportability and consistency of an opinion in determining persuasiveness and not required to provide specific reasons as to why he did not adopt every particular limitation). However, when a limitation is significant and contrary to the ALJ's assessed RFC, then the ALJ has some duty to explain why it has been rejected. See Robbins, 466 F.3d at 883.

      Here, the ALJ did not err. Contrary to plaintiff's assertion, the ALJ appears to have reasonably determined that the assessed mental RFC accommodated Dr. Durr's opinion that plaintiff had moderate difficulties with following normal rules of the workplace. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (an ALJ may translate assessed opined limitations into a concrete restriction in the RFC determination and it may be consistent with the medical opinion even though it does not include the same verbiage). The ALJ specifically stated that this moderate limitation and Dr. Durr's opined mild limitations were generally consistent with the record. As for Dr. Durr's opinion that plaintiff was "at risk" for missing work, this opinion was neither significant nor contradictory to the RFC. The phrasing of the opinion was vague and suggests that the risk for missing work was at most mild.

      In sum, the ALJ properly evaluated Dr. Durr's opinion under the revised regulations. The evidence reasonably supports the ALJ's interpretation and the Court may not substitute its judgment. Because the ALJ properly evaluated Dr. Durr's opinion and translated it to functional limitations, the RFC determination is supported by substantial evidence.

      Accordingly, a remand or reversal on this basis is not warranted.

///
///
///

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 31, 2023

                                                /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE